RECEIVED
IN LAKE CHARLES, LA

AUG 1 3 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MID-DELTA HEALTH SYSTEMS, INC., ET AL. | : | DOCKET NO. 06 cv 2173 |
| VS. | : | JUDGE MINALDI |
| PROFESSIONAL TRENDS, INC., ET AL. | : | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court are Motions for Appointment of Receiver [doc. 2] and for Preliminary Injunction [doc. 3] filed by Mid-Delta Health Systems, Inc., et al. ("Mid-Delta"). The motions are opposed by Professional Trends, Inc., et al. ("Professional Trends"). Also before the court is a Motion to Dismiss Claims Against John Daniel Jones [doc. 21] filed by defendant Jones. This motion is opposed by Mid-Delta.

## BACKGROUND

Mid-Delta is a Mississippi corporation and the prospective buyer of Professional Trends.[1] Professional Trends is a Louisiana corporation engaged in the provision of home heath services pursuant to a license issued by the State of Louisiana Department of Health and Hospitals (DHH).[2] On August 9, 2006, Mid-Delta and Professional Trends entered into an "Agreement to Sell Business" (the "Sales Agreement").[3]

---

[1] Compl. ¶¶ 1, 13.

[2] Id. ¶ 11.

[3] See Pls.'s Ex. B.

5

By the Sales Agreement, Mid-Delta agreed to purchase all assets of Professional Trends, including all provider numbers and all state Certificates of Need (CON).[4]  In addition to the usual warranty against encumbrances, the Sales Agreement was conditioned upon Mid-Delta being "reasonably satisfied that [Professional Trends's] CON, provider numbers, and licenses can be effectively transferred and sold to [Mid-Delta] free of encumbrance, lien, or liabilities."[5]  The sale of Professional Trends to Mid-Delta was to close on or before September 30, 2006.

Prior to August, 9, 2006, Professional Trends was in jeopardy of losing its state license and authorization to operate a home health agency.[6]  Thus, as additional consideration for the sale, Professional Trends gave to Mid-Health a limited power of attorney to correct the Medicare/Medicade and State of Louisiana license deficiencies.[7]  The parties also entered into a "Consulting Agreement" whereby Mid-Delta would help Professional Trends maintain an active CON license, which required the filing and implementation a "plan of correction" approved by the State of Louisiana.[8]  The Consulting Agreement also provided that Mid-Delta would assist in the day-to-day operation of Professional Trends.[9]  As of the date of suit, Mid-Delta alleged that it was still carrying out its duties under the plan of correction, as well as the day-to-day management of

---

[4] *Id.* ¶ 3.

[5] *Id.*

[6] Compl. ¶ 18.

[7] Pls.'s Ex. F.

[8] Pls.'s Ex. H.

[9] *Id.*

Professional Trends.[10]

Needless to say, the sale of Professional Trends to Mid-Delta was not consummated on September 30, 2006. On November 9, 2006, Mid-Delta filed suit against Professional Trends; its owner, Brenda Wilcox; Wicox's attorney, Paul Breaux; and five individuals who also allegedly have an ownership interest in Professional Trends. Mid-Delta alleges that, since signing the Sales Agreement, it "has discovered there are persons never disclosed by Wilcox and her attorney, who claim a shareholder interest in and to the proceeds of the sale."[11] Mid-Delta also avers that it has discovered "numerous undisclosed liens, claims, encumbrances and material non disclosures that must be remedied in order to conduct a closing in compliance with the terms of the [Sales Agreement]."[12] Mid-Delta further alleges that on September 11, 2006, Paul Breaux cashed a check for $50,000 in earnest money in direct violation of the Sales Agreement.[13]

Despite these many impediments and the fact that Mid-Delta could potentially opt out of the sale, Mid-Delta avers that it "has decided to complete the sale and does not intend to terminate the agreement."[14] Mid-Delta intimates that it is pursuing the sale in order to obtain Professional Trends's CON license, which is unique and irreplaceable. Accordingly, Mid-Delta seeks, among other relief, specific performance of the Sales Agreement; an accounting, attachment, and turnover

---

[10] Compl. ¶ 22.

[11] *Id.* ¶ 23.

[12] *Id.* ¶ 24.

[13] *Id.* ¶ 17. Unmentioned above is that on August 10, 2006, Mid-Delta also advanced Professional Trends $9,000 of the purchase price in order to allow Personal Trends to meet its payroll and other unpaid obligations.

[14] *See id.* ¶ 31.

3

of the earnest money; the appointment of a receiver; and a preliminary injunction in order to preserve Professional Trend's assets and maintain the status quo.

## ANALYSIS

### Motion for Appointment of Receiver [doc. 2]

A district court has the power in equity to appoint a receiver under Rule 66 of the Federal Rules of Civil Procedure. FED.R.CIV.P 66. However, the appointment of a receiver is an extraordinary remedy and is committed to the sound discretion of the court. *See Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993). "The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles." *Aviation Supply Corp.*, 999 F.2d at 316; *see also* 12 C. WRIGHT, A. MILLER & R. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2983 (*Erie* doctrine does not apply to the appointment of a receiver in federal court).

Under Rule 66, "the appointment of a receiver can be sought 'by anyone showing an interest in certain property or a relation to the party in control or ownership thereof such as to justify conservation of the property by a court officer.'" *Santibanez*, 105 F.3d at 241 (quoting 7 J. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 66.05[1]). Notwithstanding, "a receiver ordinarily will not be appointed at the insistence of a simple contract creditor, even if he demonstrates the inadequacy of his remedy at law . . . ." WRIGHT & MILLER, *supra* at § 2983.

As Justice Brandeis wrote:

[A]n unsecured simple contract creditor has, in the absence of statute, no substantive right, legal or equitable, in or to the property of his debtor. This is true, whatever the nature of the property, and although the debtor is a corporation and insolvent. The only substantive right of a simple contract creditor is to have his debt paid in due

4

course. His adjective right is, ordinarily, at law. He has no right whatsoever in
equity until he has exhausted his legal remedy. After execution upon a judgment
recovered at law has been returned unsatisfied, he may proceed in equity by a
creditors' bill.

*Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497, 43 S.Ct. 454, 455-56 (1923).

The factors typically considered by courts in deciding whether to appoint a receiver are: a

valid claim by the party seeking the appointment; the probability that fraudulent conduct has

occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost,

or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and

likelihood that appointing the receiver will do more good than harm. *Santibanez*, 105 F.3d at 241-42

(quoting *Aviation Supply Corp.*, 999 F.2d at 316-17).

Application of the above factors does not warrant the appointment of a receiver in this case.

As noted, receivers are not ordinarily appointed in at the insistence of a simple contract creditor.

Further, while Mid-Delta asserts that Professional Trends has engaged in fraud and that there is a

substantial risk that the CON license might be lost, Mid-Delta ignores the fact that it is already in

control of Professional Trends and has experience in the management of a home health agency. As

such, Mid-Delta itself is in the best position to avoid the loss of the CON license. The appointment

of a receiver would serve no other purpose than to assist the plaintiff in the remediation of a difficult

business situation.

Accordingly, Mid-Delta's motion for the appointment of a receiver will be denied.

## Motion for Preliminary Injunction [doc. 3]

To obtain a preliminary injunction, Mid-Delta has the burden of establishing four factors: (1)

a substantial likelihood of success on the merits; (2) a substantial threat that Mid-Delta will suffer

irreparable injury if the injunction is not granted; (3) that the threatened injury to Mid-Delata outweighs the threatened harm the injunction might cause Professional Trends; and (4) that the grant of the injunction will not disserve the public interest. *Tubwell v. Griffith*, 742 F.2d 250, 251 (5th Cir. 1984) (citing *Roberts v. Austin,* 632 F.2d 1202, 1207 (5th Cir. 1980); *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).

"[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence. Thus, the district court can accept evidence in the form of deposition transcripts and affidavits." *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) (citations omitted). Despite this relaxed standard, "courts have shown appropriate reluctance to issue such orders where the moving party substantiates his side of a factual dispute on information and belief." *Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.*, 446 F.2d 353, 357 (5th Cir. 1971).

Here, Mid-Delta has not produced affidavits or other testimony in support of its motion for a preliminary injunction. Rather, the plaintiff relies upon general and unsubstantiated allegations in an effort to obtain an injunction "to preserve the property, the subject matter of this lawsuit, and to preserve the status quo."[15]

Moreover, Mid-Delta fails to describe the acts it seeks to have restrained with any specificity. Mid-Delta acknowledges as much in its brief. It states, "We believe this court clearly can fashion such [a reasonably detailed] order. However, the command for specificity is not absolute; it merely requires injunctions to be 'framed so that those enjoined will know what conduct the court has

[15] Pls.'s Supp. Mem. 1 [doc. 3].

6

prohibited.'"[16] Correlative to the court's obligation to draft an injunction with sufficient specificity under Rule 65(d), however, is the applicant's duty to identify the acts to be enjoined. It is imperative that the applicant do more than faithfully rely upon the court to divine the acts which, if restrained, would "preserve the status quo."[17]

Accordingly, Mid-Delta's motion for a preliminary injunction will be denied.

## Motion to Dismiss Claims Against John Daniel Jones [doc. 21]

John Daniel Jones moves the court to dismiss Mid-Delta's claims against him pursuant to Rule 12(b)(6).  Mid-Delta named Jones as a defendant because he claims "an interest in the ownership of Professional Trends, Inc. and ultimately the proceeds of sale thereof."

On a Rule 12(b)(6) motion, the court must view the plaintiff's complaint in the light most favorable to the plaintiff and must accept as true all of the factual allegations in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 1161 (1993).  The motion will be denied if the allegations support relief on any possible theory.  *Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994).  The court will "bend over backwards to avoid granting a 12(b) motion to dismiss." *McCann v. Texas City Refining, Inc.*, 984 F.2d 667, 673 (5th Cir. 1993).

"[T]he district court's inquiry typically is directed simply to the question whether the

---

[16] *Id.* at 4.

[17] In its First Amended and Supplemental Complaint [doc. 7], Mid-Delta requests that the court issue a preliminary injunction restraining the defendants from engaging in certain enumerated activities "during and pending appointment of a Receiver."  However, because the court has declined to appoint a receiver, this list of activities is of no additional help in determining the activities to be restrained.

7

allegations constitute a statement of a claim for relief under Rule 8(a)." 5B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 1998); *Leatherman*, 507 U.S. at 168, 113 S.Ct. at 1163. All that is required is that the petition include "a short and plain statement of the claim that gives the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman*, 507 U.S. at 168, 113 S.Ct. at 1163 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99. 103 (1957)) (internal quotations omitted).

There is no requirement that the plaintiff "set out in detail the facts upon which she bases her claim." *Id.* General factual allegations are sufficient and the court "will presume that general allegations embrace those specific facts that are necessary to support the claim." *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2137 (1992)). However, conclusory allegations concerning the legal effect of the events alleged do not have to be accepted by the court. WRIGHT, MILLER & COOPER, *supra* at § 1357.

Jones argues that Mid-Delta's claims for breach of contract and specific performance must fail for lack of a contractual relationship between Jones and the plaintiffs.[18] Jones further asserts that the claims arising out of the disappearance of the escrow money should be dismissed because he is not in possession of this money. In opposition, Mid-Delta argues that the claims against Jones should be maintained as he is a necessary party under Rule 19 of the Federal Rules of Civil Procedure.

---

[18] To the extent that Jones seeks dismissal of Mid-Delta's claims for the appointment of a receiver and injunctive relief, the motion is mooted by today's ruling.

As Jones argues, Mid-Delta's complaint does not sufficiently state a cause of action against him. First, to the extent that Mid-Delta seeks to enforce the Sales Agreement against Professional Trends, Mid-Delta's cause of action is against the corporation and its agent, Brenda Wilcox. Indeed, corporations are distinct legal entities, separate and apart from the individuals who compose them. *See Kingsman Enterprises, Inc. v. Bakerfield Elec. Co., Inc.*, 339 So.2d 1280, 1282 (La.App. 1st Cir. 1976). Shareholders are not generally liable for the debts of the corporations, unless, under exceptional circumstances, the court "pierces the corporate veil." *Id.* Even assuming Jones has some sort of non-equity interest in Professional Trends, the allegations of the complaint fail to state a claim for relief.

Accordingly, Jones's motion to dismiss will be granted. Furthermore, the plaintiffs are hereby given notice that the court will consider, *sua sponte*, whether to dismiss the plaintiffs' claims against shareholders Steven Anthony Privitor, Darrell Glen Newman, and Eija Watson.[19] *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Intern., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984) (a district court may dismiss a complaint on its own for failure to state a claim if it employs fair procedure).

## CONCLUSION

For the foregoing reasons, the Motion for Appointment of Receiver [doc. 2] and Motion for Preliminary Injunction [doc. 3] filed by Mid-Delta will be denied. The Motion to Dismiss Claims Against John Daniel Jones [doc. 21] will be granted. Furthermore, the court will consider, *sua*

---

[19] Shareholder Debbie Mullenix was voluntarily dismissed on June 28, 2007.

*sponte*, whether to dismiss the Mid-Delta's claims against the remaining shareholder-defendants.

Lake Charles, Louisiana, this ____3____ day of ____Aug____, 2007.

PATRICIA MINALDI
UNITED STATES DISTRICT COURT

10