UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA  DIVISION

**MID-DELTA, et al**                                      **CIVIL ACTION NO. 06-2173**
                                                                                        (CONSENT)
**VERSUS**

**PROFESSIONAL TRENDS, et al**         **MAGISTRATE JUDGE KIRK**

MEMORANDUM RULING

The second phase of this trial regarding damages was held on February 1, 2010. The liability issues in this case were tried on December 16th and 21st, 2009.

Plaintiffs presented evidence including the testimony of Clara Reed, Mr. Monteleone who testified as an expert an expert forensic accountant, and attorney Jake Kilburn.

The evidence shows that, for the period from August 9, 2006 to March 19, 2008, Professional Trends received Medicare reimbursements in the amount of $1,323,069.91.[1] Mid-Delta is entitled, under the consulting agreement, to those amounts.[2]

---

[1] At least $198,000 of that amount was withdrawn by Wilcox at various casinos, and $56,751 was withdrawn by counter check. The sum of $575,570 was expended by Wilcox through use of a check-card to Victoria's Secret and other retailers.

[2] Mid-Delta incurred "at least" $630,351.01 in expenses in connection with running the business of Professional Trends pursuant to the consulting agreement, but did not receive any management fees or other remuneration for its work. Included in that amount is the $50,000 deposit for the buy-sell agreement,

1

In addition, $16,623.00 was spent by Mid-Delta to pay some of the debts of Professional Trends which existed and were incurred before Mid-Delta agreed to buy the business and operated the company pursuant to the consulting agreement. See plaintiffs' exhibit 120. Plaintiff, Mid-Delta is entitled to judgment for this amount.

Punitive damages are appropriate and I find by clear and convincing evidence should be awarded due to the fraudulent conduct this court has already found to have occurred. Miss. Stat. §11-1-65(1)(a); Polk v. Sexton, 613 So.2d 841, 845 (Miss 1993)[3]. Because there is no evidence in the record as to Wilcox's net worth, and because of the size of the compensatory judgment that will result from this ruling, I find that punitive damages in the amount of $1.00 should be awarded in order to deter similar conduct by the defendants and others in the future.

Plaintiffs also proved that they have incurred in excess of $211,988.66 in attorney fees and costs and expenses which are recoverable because punitive damages are awarded.

In addition, expert fees will be awarded in the amount of

---

and the $9,000 advance made by Mid-Delta to Professional Trends, both of which serve as a credit on the purchase price.

[3] The parties agree that Mississippi law applies as per the contract terms.

$31,771.72.

The purchase price of $525,000 should be offset by the above amounts. Mid-Delta also proved that there are other debts and/or claims in the amount of $1,038,596 which have either not been proved to be owed, or which have not been paid.[4] See plaintiffs' exhibit 120. This figure includes $102,539 which Watson has proved is owed to her by Professional Trends and Wilcox on the loan by Watson and includes interest. Attorney fees are not sought by her.

In the event any of these debts are ever proven to be owed by Mid-Delta, Mid-Delta is entitled to an offset to the purchase price in such amount.

Finally, because of Wilcox's actual fraud and operation of the business as her personal bank account, the corporate veil should be pierced. See Indest-Guidry, Ltd v. Kay Office Equipment, Inc., 997 So.2d 796 (La. 3d C., 2008); Rock v. ATPIC Trucking, Inc., 739 So.2d 874 (La. 1st C., 1999); First Downtown Dev. v. Cimochowski, 613 So.2d 671 (La. 2nd C., 1993); and Lone Star ind. v. American Chemical, 461 So.2d 1063 (La. 1986). For that reason and the fact

---

[4] This figure includes $610,920 "debt" (in the form of rent and loans) to Nasif/Lebnan Investments. The legitimacy of $238,000 of that amount, despite the fact that it has been reduced to judgment, appears questionable since it is for a new lease Wilcox signed in March of 2008 doubling the monthly rent for Professional Trends' office space at a time when the rent was not past due, but was being paid by Mid-Delta, the lease had not expired and, Wilcox was not running the business (Mid-Delta was). It is also questionable whether any loans were actually made to the business since the expert did not mention such in his testimony.

that I previously found Wilcox intentionally interfered with both the buy-sell agreement and the consulting agreement, judgment should be entered *in solido* against Professional Trends and Wilcox for the damages awarded.

A judgment will be signed in accordance with my two Rulings. Because the attorneys have advised the court that Wilcox has abandoned the business, thus placing patient care and the license at risk and in order to maintain the value of the business and retain its employees, the court will order that the Bill of Sale be executed within 24 hours of judgment being signed.

This matter will be referred to the United States Attorney for the purpose of determining, if he wishes to do so and in his discretion, whether any statutes of the United States may have been violated.

Alexandria, Louisiana, February 3, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE